ELLEN F. ROSENBLUM
Attorney General
CHRISTINA L. BEATTY-WALTERS  #981634
CARLA A. SCOTT  #054725
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  Tina.BeattyWalters@doj.state.or.us
Email:  Carla.A.Scott@doj.state.or.us

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| C.S. ex rel. K.C.; K.C. ex rel L.C.; T.B. ex rel. C.B.; B.B. ex rel C.B.; T.C. ex rel L.C., on their own behalf and on the behalf of all those similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>FARIBORZ PAKSERESHT, in his official capacity as Director of Department of Human Services, State of Oregon; and ANNA LANKSY, in her official capacity as the Interim Director of the Office of Developmental Disabilities Services, Oregon Department of Human Services,<br><br>       Defendants. [1] | Case No.  6:17-cv-00564-MC<br><br>DEFENDANTS' UNOPPOSED MOTION TO DISMISS AS MOOT |

---

[1] Caption modified from *C.S. v. Saiki* by operation of Fed. Civ. P. 25(d). *See* eDoc. 18.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*LR 7-1 Certification*

Counsel for Defendants have conferred with counsel for the Plaintiffs about this motion, its contents, and the relief sought, and counsel for Plaintiffs reported Plaintiffs do not oppose the motion to dismiss, with the understanding that Plaintiffs retain the ability to seek an award of attorney fees pursuant to Fed. R. Civ. P. 54(d)(2).

## MOTION

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3), Defendants move for an order dismissing this action for lack of subject matter jurisdiction because Plaintiffs' claims are moot. This motion is supported by the following memorandum, the Declaration of Anna Lansky, filed herewith, and the record in this case.

## MEMORANDUM OF LAW

### I.      Summary of Argument

This case filed by persons with intellectual or developmental disabilities who receive in-home attendant care services administered by the Office of Developmental Disabilities Services ("ODDS") has been pending and also stayed for nearly seven years.  In that time, the factual basis for the claims asserted has changed so significantly that this dispute is no longer live. Specifically, the system for determining in-home service hours for people served by ODDS that was in place when this case was filed is no longer used and will not be used in the future.  As a result, the case is moot and should be dismissed for lack of subject matter jurisdiction.

### II.     Factual and Procedural Background

#### A.      The claims asserted and relief sought

On April 10, 2017, Plaintiffs filed this case seeking preliminary and permanent injunctive relief against Oregon Department of Human Services leadership after ODDS cut in-home service hours statewide for people who receive in-home care services from ODDS.  Plaintiffs assert seven claims for relief on their own behalf and on behalf of a purported class of similarly situated persons.

In their first claim, plaintiffs assert that the notices they received in 2016 and 2017 describing their service hour reductions did not satisfy procedural due process because they did not explain the individualized basis for the reductions, and specifically whether reductions resulted from a change in the formula or a change in assessed need.  In their second claim, Plaintiffs assert the needs assessment tool ODDS used at the time of filing to determine the quantity of in-home service hours violates procedural and substantive due process protections because its basis is a secret, internal algorithm.  In their third claim, Plaintiffs contend that the exceptions process used by ODDS at the time of filing to provide a pathway to additional in-home service hours violates procedural due process because the process lacks standards and fails to allow for meaningful participation.  In their fourth claim, Plaintiffs contend that the administrative review process ODDS provided at the time of filing for appeals of their assessment-driven in-home hours allocations violates procedural due process protections because it fails to provide for meaningful review of the adequacy of services.  Plaintiffs' fifth and sixth claims allege that the 2016/2017 across-the-board cuts to service hours violates both the Americans with Disabilities Act and the Rehabilitation Act because the cuts created or exacerbated a risk of institutionalization, isolation, and segregation.  Plaintiffs assert a seventh claim under the Social Security Act, which they contend requires that ODDS provide services as needed.  In that claim, they assert that the assessment tool ODDS used at the time of filing to establish in-home service hours is neither objective nor scientific and prevents individualized determinations of need.

For relief, Plaintiffs seek declarations that Defendants violated federal law in the ways described in their claims and also injunctive relief rescinding reductions of benefits.  Further, they seek court approval of a plan to develop a more scientifically-supportable assessment tool, improved notification procedures, and procedures for individuals to seek review of the adequacy of services.

TBW/rn1/926467763

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**B.    Procedural background**

Plaintiffs filed a motion for preliminary injunction and a motion for class certification along with their complaint.  Rather than litigate the motion for preliminary injunction, Defendants conceded the motion and agreed to the entry of the order proposed by Plaintiffs.  The Court entered the preliminary injunction on April 19, 2017.  (Docket #11).  That preliminary injunction is still in place.

Following a status conference with the Court on April 18, 2017, the Court stayed this case and ordered a joint status report to be filed.  April 18, 2017, Minute Order (Docket #10).  The parties requested the stay to allow Defendants to continue development of the new assessment tool, service groups, and hours allotments and to coordinate with Plaintiffs' counsel about that work.  *See* June 2, 2017, Joint Status Report (Docket #14).  The stay has been in place since then with court-ordered status reports accompanied by motions to continue the stay filed every six months.

As part of the parties' joint motions to continue the stay, they agreed that no further litigation need occur in this case.  Specifically, they agreed that the Defendants would not need to file an answer or respond to the motion for class certification.  *See, e.g.,* December 5, 2017, Joint Status Report (Docket # 17).  The parties also reserved their rights to continue the litigation on appropriate notice.  *Id*.  On September 3, 2019, the Court entered an order denying as moot the motion for class certification.  September 3, 2019, Minute Order (Docket # 26).

**C.    ODDS system changes**

Since this case was filed, ODDS has made many changes to its system for determining in-home service hours.  When this case was filed, the assessment tool in use was ANA-D (for adults) and CNA-D (for children).  Through the use of these "version D" tools, ODDS imposed an across-the-board reduction of benefits from the "version C" ANA and CNA tools that ODDS had used previously.  Declaration of Anna Lansky ("Lansky Dec."), ¶ 2.  Since then, ODDS has developed an entirely new assessment tool, the Oregon Needs Assessment ("ONA").  Lansky Dec., ¶ 3.  That tool was developed by outside experts who then tested it for completeness,

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

accuracy, usability, reliability, and validity. *Id*. ODDS then engaged another outside expert to review the reliability and validity analysis. *Id*. Based on the work done by these multiple outside experts, the ONA is a valid and reliable tool for assessing the functional needs of people served by ODDS. *Id*. Notably, the ANA and CNA assessment tools in use when this case was filed were not tested for validity or reliability. Lansky Dec., ¶ 2.

Following development of the ONA, ODDS worked with an outside expert to develop service groups and hours allocations for the ONA. Lansky Dec., ¶ 5. Service groups and hours allocations allow individuals with similar support needs to access similar ranges of in-home hours for their planning needs. Lansky Dec., ¶ 5. As part of this work, the expert conducted multiple records reviews and engaged with community partners. Lansky Dec., ¶¶ 5, 6.

ODDS also adopted a revised exceptions rule that went into effect January 1, 2024. OAR 411-450-0065. Under that rule, if a consumer is unable to have their support needs met with the hours allocated within their service group, they can request a greater hour allocation. OAR 411-450-0065(4). The new rule contains clear standards that ODDS must apply to determine whether a consumer needs exceptional hours to meet their support needs. See OAR 411-450-0065(2). The rule also includes a process for the consumer to submit supporting information and for the agency to request additional information from the consumer. OAR 411-450-0065(4)(a), (c), (d).

If a consumer's hours are reduced under the ONA, or their exceptions request is denied, ODDS will serve them with a notice describing their administrative appeal rights. Lansky Dec., ¶¶ 10, 11. ODDS will provide notices that are transparent, clear, and responsive to the specific assessment criteria that changed or the exceptions criteria that ODDS applied. Lansky Dec., ¶¶ 10, 11, Exs. 1, 2. Unlike the notices that ODDS provided when it reduced hours based on ANA-D and CNA-D assessments, notices of reductions that result from ONA to ONA assessments and notices of exceptions denials will be individualized. Lansky Dec., ¶¶ 10, 11.

Finally, the administrative appeal process is meaningful. If a consumer appeals a reduction in hours that is based on an ONA assessment, the administrative law judge will have the authority to remand to the agency for a review of the assessment or for another assessment.

Page 5 -    DEFENDANTS' UNOPPOSED MOTION TO DISMISS AS MOOT

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Lansky Dec., ¶ 10.  And if a consumer appeals the denial of their exceptions request, the administrative law judge will be able to make findings and conclusions about whether ODDS correctly applied the criteria in rule.  Lansky Dec., ¶ 11.

In short, the aspects of the ODDS assessment, exceptions, notice, and administrative appeal systems challenged in this case have changed in significant ways.

### D.     Current status

Currently, ODDS is using the ONA for service eligibility and to assess functional needs for planning purposes.  Lansky Dec., ¶ 4.  It is not using the ONA to determine the number of hours for in-home care.  Rather, in compliance with this Court's preliminary injunction, ODDS restored the hours of service authorized under the ANA-C or CNA-C assessment tools for those consumers who experienced a decreased in authorized hours under the version D of those tools. ODDS has not, since then, reduced authorized hours.  Lansky Dec., ¶¶ 8, 9.

An additional restriction is in place as well.  During the pandemic, before ODDS was in a position to seek the relief it seeks in this motion and to fully implement the ONA, Congress enacted the American Rescue Plan Act ("ARPA").  Lansky Dec., ¶ 8.  The Centers for Medicare and Medicaid Services, the federal agency that oversees the ODDS programs, interprets a provision of ARPA to prohibit ODDS from reducing in-home service hours below the level authorized for individuals on April 1, 2021, until all the State's ARPA funds are spent.  Lansky Dec., ¶ 8.  The State is not expected to deplete its allocated ARPA funds until 2025.  Lansky Dec., ¶ 8.  Accordingly, ODDS cannot fully implement ONA to use service groups to set hours allocations until both this Court's injunction expires and all State ARPA funds are spent.  Lansky Dec., ¶ 8.

## III.   Legal Standards

### B.     Fed. R. Civ. P. 12(b)(1) and 12(h)(3)

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed once the court determines that it lacks subject-matter jurisdiction to adjudicate the claims.  Fed. R. Civ. P. 12(b)(1).  The court presumes that it has no jurisdiction until the party asserting jurisdiction

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

proves otherwise, and once subject-matter jurisdiction has been challenged, the burden of proof is placed on the party asserting that jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) ("the party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists"). A challenge to the court's subject-matter jurisdiction may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where, as here, defendants bring a factual challenge, the court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

Fed. R. Civ. P. 12(h)(3) provides, "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." The difference between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion "is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party." *Hamidi v. Serv. Emps. Int'l Union Loc. 1000*, 386 F. Supp. 3d 1289, 1294 (E.D. Cal. 2019), *aff'd*, No. 19-17442, 2021 WL 4958855 (9th Cir. Oct. 26, 2021) (internal citation and quotation marks omitted); *see also Augustine v. United States*, 704 F.2d 1074, 1075 n.3 (9th Cir. 1983) (stating that the issue of subject-matter jurisdiction may be raised by the parties at any time pursuant to Rule 12(h)(3)); *Johnson v. Cal. Welding Supply, Inc.*, No. 2:11-cv-01669 WBS GGH, 2011 WL 5118599, at *2 (E.D. Cal. Oct. 27, 2011) (applying a single standard to a motion to dismiss pursuant to Rules 12(b)(1) and 12(h)(3)).

**B.     Mootness**

Article III to the Constitution only empowers federal courts to decide cases and controversies. That "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotations omitted). As a result, federal courts may not issue advisory opinions on hypothetical facts or resolve issues that will not affect the parties. *Id*. There is no longer a case or controversy, and a case becomes moot, "when the issues presented are no longer 'live' or the

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

parties lack a legally cognizable interest in the outcome." *Id.* (internal quotations omitted).  Put another way, a case is moot if the dispute "is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Alvarez v. Smith*, 558 U.S. 87, 93 (2009).  The question when evaluating a motion to dismiss on mootness grounds is "whether there is anything left for the court to do." *Western Oil and Gas Ass'n v. Sonoma Cnty.*, 905 F.2d 1287, 1290 (9th Cir. 1990).  "Mootness is "determined on a claim by claim basis." *Pac. Nw. Generating Co-op. v. Brown*, 822 F. Supp. 1479, 1506 (D. Or. 1993), *aff'd,* 38 F.3d 1058 (9th Cir. 1994) (citing *Headwaters, Inc. v. Bureau of Land Management,* 893 F.2d 1012, 1015–16 (9th Cir.1989) (separately addressing mootness issue as to injunctive relief and declaratory relief)).

## IV.  Argument

### A.  Plaintiffs' procedural due process claim asserting lack of adequate notice of benefit reductions is moot.

Plaintiffs' procedural due process claim is moot because it was based on factual circumstances that have changed and will not be repeated.  Plaintiffs contend the notices ODDS sent to them in late 2016 and early 2017 informing them of planned reductions in their services were legally insufficient because they lacked an individualized explanation.  Compl., ¶¶ 115-18. The circumstances under which those reductions occurred, however, as well as the tools ODDS used at the time have changed.

First, ODDS has completely overhauled and replaced the assessment tool.  The assessment tool used at the time the complaint was filed was the ANA (adults) and the CNA (children).  More specifically, the ANA and CNA version D were used to establish, and in Plaintiffs' cases, reduce service hours from the previously used ANA and CNA version C assessment tool, based on legislative direction.  *See* Stenson Dec. (Docket #4-1), Ex. 1, p. 1-2 (template for Notice of Planned Action explaining change from ANA C to ANA D).  The ANA/CNA tools are not comparable to the ONA tool.  The ONA has been developed by experts, tested, and validated.  The same cannot be said of the ANA and CNA tools.  Lansky Dec., ¶ 2. The ANA and CNA assessment tools will be fully retired once the injunction in this case is lifted

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

and CMS provides authority to ODDS to roll out its ONA tool to establish service groups and in-home hours.

Second, ODDS established service groups and hours allotments based on utilization analysis and records reviews performed by outside experts in coordination with community partners.  Lansky Dec., ¶¶ 5, 6.  ODDS followed a robust process in order to ensure its service groups and hours allocations appropriately group individuals with similar needs together and allocate the number of hours that most need.  Lansky Dec., ¶ 5.

Third, the notices of planned action that ODDS will send based on the results of an ONA assessment are materially different from those that were at issue when this case was filed. ODDS has drafted notices that it plans to use when reductions occur in the future based on use of the ONA to establish service groups and in-home hours allocations.  Draft notices are attached as Exhibits 1 and 2 to the Declaration of Anna Lansky.  One draft notice will be used the first year as a transition from the ANA or CNA assessment to the ONA assessment.  Then a different notice will be used in future years to describe which part of the ONA assessment was scored differently from one year to the next, if that occurs.  Further, the notices will explain that consumers have the right to seek exceptions and will outline the process for seeking exceptions in addition to explaining administrative appeal rights for a reduction in services.  Lansky Dec., ¶ 10.

In short, the entire system of determining in-home hours has changed and the notices to inform consumers of any reductions will also change.  Put simply, the facts that existed when this case was filed no longer exist.  And the new notices and the new assessment tool have been developed to comply with due process requirements, among other legal obligations.  *See, e.g.,* *Barnes v. Healy*, 980 F.2d 572, 579 (9th Cir. 1992) (explaining notices must "give[] an agency's reason for its action in sufficient detail that the affected party can prepare a responsive defense"). At this point, any decision by this Court based on the facts alleged in the Complaint would be advisory because those facts no longer exist and will not repeat going forward.  The procedural due process claim is moot.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**B.    Plaintiffs' substantive and procedural due process claim asserting the assessment tool uses a secret, arbitrary algorithm is moot.**

Plaintiffs assert in their second claim that the assessment tool ODDS used in 2017 violates their procedural and substantive due process rights because it uses a secret and arbitrary algorithm that is not ascertainable to consumers. Compl., ¶¶ 121. Further, they contend the nature of the assessment tool deprives consumers of a reasonable opportunity to participate in a hearing to challenge any reductions in service hours. Compl., ¶¶ 124. That claim is also moot because the underlying facts have changed and will not be repeated.

Moving forward, as soon as this Court's injunction is lifted and CMS permits, ODDS will begin using the new ONA assessment tool to assign individuals to service groups and their associated in-home hours ranges. The new tool was developed by experts and is a valid and reliable way to assess the functional needs of the consumers ODDS serves. Community partners, including counsel for the Plaintiffs, also participated in the development of the tool, the service groups, and the in-home hours ranges. Lansky Dec., ¶ 6. Further, if any individual should have their hours reduced, ODDS will provide them with notice of their right to hearing. And consumers can always request exceptions under the revised exceptions rule. *See* OAR 411-450-0065. As a result, any decision that is based on the facts alleged in the Complaint will be advisory because those facts no longer exist.

**C.    Plaintiffs' substantive and procedural due process claim asserting lack of reasonable notice of the exceptions process is moot.**

In their third claim, Plaintiffs assert that ODDS violated their substantive and procedural due process rights by failing to provide adequate notice of, and the ability to participate in, the exceptions process. Compl., ¶¶ 126-29. This claim is moot because the essential facts underlying the claim have changed. As described above, notices informing consumers of reductions in benefits will include notice of the right to request exceptions along with a description of the process. Lansky Dec., ¶ 10. Further, ODDS has adopted a revised exceptions rule that includes standards ODDS will use to determine exceptions and clarifies the process to request them, submit information, and challenge a denial. *See* OAR 411-450-0065. As a result,

Page 10 -  DEFENDANTS' UNOPPOSED MOTION TO DISMISS AS MOOT

any ruling based on the facts alleged in the Complaint would be advisory because those facts no longer exist and will not repeat.

    **D.**    **Plaintiffs' procedural due process claim challenging the administrative appeal process is moot.**

    In their fourth claim, Plaintiffs assert that the administrative appeal process that existed in 2017 is not a meaningful process because the administrative law judge is limited to approving the hours that the assessment tool allocates.  Again, as on the other claims, the facts underlying this claim have changed and will not recur.  When the new ONA tool is fully implemented and an individual's hours are reduced based on an ONA assessment, the administrative law judge will have authority to review the assessment completed and remand back to the agency for a review of the prior assessment or for completion of a new assessment.  Lansky, Dec., ¶ 10.  Further, now that the new exceptions rule has been adopted, there are criteria that ODDS will apply to the consideration of exceptions.  *See* OAR 411-450-0065(2).  If an exceptions request is denied, an administrative law judge will have authority to make findings and conclusions that differ from those of the agency.  Lansky Dec., ¶ 11.  Plaintiffs' fourth claim is based on old facts under the old assessment scheme and the old exceptions rule.  Any ruling on the allegations pleaded in the Complaint will have no impact on the Plaintiffs or on any of the work that ODDS is currently doing or planning and would, therefore, be advisory.

    **E.**    **Plaintiffs' Americans with Disabilities Act and Rehabilitation Act claims are moot.**

    Plaintiffs' fifth and sixth claims under the Americans with Disabilities Act ("ADA") and Rehabilitation Act that are based on the risk of institutionalization are also moot.  Plaintiffs contend that the cuts ODDS made in late 2016 and early 2017 to their in-home service hours created the risk of their institutionalization.  Compl., ¶¶ 138, 146-48.  ODDS made those cuts in response to its interpretation of legislative direction.  Lansky, ¶ 2.  Those cuts were embedded in the ANA and CNA version D adopted in 2016.  Lansky, ¶ 2.  As described above, a new assessment tool has been created, tested, and validated.  Service groups and in-home hours

TBW/rn1/926467763

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ranges have been developed by experts and ODDS based on service utilization analysis and review of records of consumers served by ODDS. And a revised exceptions rule has been adopted that includes criteria for the agency to apply to ensure individuals are able to get their needs met. The factual basis for this case has changed completely. Accordingly, any ruling issued by this Court based on assessment tools that have been superseded by a different and better tool and based on an exceptions rule that has been substantively amended will be advisory and have no effect. Those claims are also moot.

### F.    Plaintiffs' Social Security Act claim is moot.

Plaintiffs' final claim under the Social Security Act is moot as well. Plaintiff contends that ODDS is not providing services as required because it relies on an assessment tool that is not objective or scientific and "currently represents little more than guesswork" about services that Plaintiffs need. Compl., ¶¶ 153, 155, 156. The assessment tools about which Plaintiffs complain are the ANA and CNA assessments that are being replaced by the ONA. Unlike the ANA and the CNA, the ONA has been tested and evaluated for reliability and validity. Lansky, ¶¶ 2, 3. The ONA, service groups, and hours allotments have been developed by experts working with ODDS and its community partners over a period of multiple years. Lansky, ¶¶ 3, 5. Further, if individuals are not getting their needs met based on the results of an ONA assessment, individuals can request exceptions based on the new criteria in rule that are designed to ensure eligible needs are being met. *See* OAR 411-450-0065(2). Accordingly, the factual landscape has changed significantly since this case was filed. Any ruling on Plaintiffs' final claim based on the facts alleged would be advisory and of no effect.

//

//

//

//

//

//

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**IV.    Conclusion**

Because this case is moot, the Court no longer has subject matter jurisdiction.  This case should be dismissed and a judgment of dismissal entered.  Further, for clarity, as a necessary result of the entry of a judgment of dismissal, the preliminary injunction will be dissolved and no longer have any effect.  *See U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1093-94 (9th Cir. 2010) ("A preliminary injunction imposed according to the procedures outlined in Federal Rule of Civil Procedure 65 dissolves *ipso facto* when a final judgment is entered in the cause.").

DATED February  9 , 2024.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

*s/ Christina L. Beatty-Walters*
CHRISTINA L. BEATTY-WALTERS #981634
CARLA A. SCOTT #054725
Senior Assistant Attorneys General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Tina.BeattyWalters@doj.state.or.us
Carla.A.Scott@doj.state.or.us
Of Attorneys for Defendants

TBW/rn1/926467763
Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000